18-6003 May it please the Court, Counsel. Our first point on appeal is that the district court erred in granting summary judgment as there were genuine issues of material fact. Given the fact that this is a really fact-intensive case, if the Court would indulge me for a second and let me try to distill the pertinent facts down here, January 9th, 2014, two days before the alleged incident, a rough ride had been complained of at the milepost 485.8-485.5 known as the Laila Closs Crossing. They went out, they did an inspection, found there was a defect. Required track speed or allowable track speed on a class 5 track is 55 miles an hour. By finding a small defect, they lowered that track speed down to 40 miles an hour. Mr. Schulenberg and his conductor, Mr. Satterfield, on the 11th of January, report to work in Oklahoma City. They're going to take a train to Tulsa. When the track speeds or track bulletins are issued lowering track speed, they knew about that when they left the depot, that when they approached that crossing, I believe it's uncontroverted, the evidence was they were going 38 miles an hour. They experienced a severe bottoming out incident. Mr. Satterfield, 47 years of experience, said it was the worst bottoming out experience he'd ever had where the locomotive didn't derail. They get to Tulsa. Mr. Schulenberg reports an injury as required by the railroad rules and federal rules. When a rough ride is reported, they have to go out and do a track inspection. That was called up to James Sadler, who was the roadmaster. He was covering for Mr. Honeycutt. It's a weekend and they cover for each other so the roadmaster can actually get a couple of days off. Mr. Sadler calls Mr. Wallace, who was the track inspector on that line of track, who goes out and does an inspection, presumably does a measurement, measuring the defect at an inch and five-eighths, which was allowable to still run that track, run the What we're alleging here is the district court, by granting summary judgment, essentially didn't pay any attention to the evidence that was induced by the plaintiff. If you look at the order, the judge doesn't say anything about the testimony of Mr. Satterfield or of the plaintiff about this bottoming out procedure. Could you have the bottoming out without negligence? Well, that goes to the next situation with our expert, who testified that in his experience in deposing other BNSF people or reading BNSF depositions, people higher up on the chain than these roadmasters would testify. If you have a bottoming out incident, that indicates you've either got a problem with the track or you've got a problem with the locomotive. So what's the answer? Is it yes, no, or I don't know, as far as whether you can have negligence? Well, usually what usually happens is it's a problem with the track. But here, your only claim on appeal is negligence per se, right? Well, that's what, based upon what the judge issued a summary judgment order on, that's what we distilled this down to. Because, and of course, we pled this from day one. I mean, in our original complaint, we pled that they didn't comply with Federal regulations. But based upon what the judge ruled and gave the railroad summary judgment for, that's what it got distilled down to here, right? Well, but that's how you've appealed. That's all that's before us is negligence. That's all that's before you, yes, ma'am. There's no question about that. Okay. And so you're looking at 49 CFR 213.63. And two, and one three, yes.  Those are the two applicable standards. And that requires the jury to find that the deviation was exceeded two and a fourth inches. That's correct. Right? That's pretty darn specific. That's unbelievably specific, yes. Okay. Yeah. How can a jury, just because it bottomed out, and people say, wow, that was a severe bottoming out, how can a jury determine that, oh, therefore, there must have been a dip that was at least two and a half, two and a fourth inches? Well, and again, that's a very good question. I'm glad you asked that. In doing his measurements, and again, I'll go right to the record. When I had, I finally had a chance to question Mr. Wallace, as the courts were, given these, the two statutes we just talked about, two regulations we talked about, four measurements have to be made on the track. When I asked Mr. Wallace what he did that day, he said, well, I don't remember. Not surprising. It had been three years. It had been three years, but again. But he said, this is what my practice is. Well, but again, when I asked him what he did, rather than testifying that he did all four measurements, all he said that he did was he took a 60-foot, 2-foot string line and measured on both rails. And again, going back through his deposition, when counsel or defendant had a chance to try to bolster his testimony, at no time did he ever say that he did all four measurements. And based upon that, Your Honor, the way a jury can get there is if, obviously, if they didn't comply with what was necessary under the Federal regulations to measure deflection, a jury could determine that based upon these gentlemen experience a severe bottoming out incident at 38 miles an hour, certainly the defect must have been more than two and a quarter inches. Yeah. And see, I mean, I could debate with you whether he did or he didn't say, but even accepting your, that, you know, he didn't testify as to measuring the load. Right. And add it to, I guess I'll call it the dip, that there's nothing that would allow a jury to determine that it was at least five-eighths of an inch that it went down when the train, when you took into account the pumping or the load here. When you're asking the jury to speculate. Well, I don't know that we are, Your Honor. And again, that's one of the reasons why we cited the Cowden case, which is an eighth-circuit decision. Well, that's totally different. There you had, first of all, the judge accepted the, your expert, which makes a big difference. And the other is the, what I call the dip measurement, I don't know what the correct term is, but dropping the string was exactly on the regulation. Yes, you're exactly right, Your Honor. So if it went down at all, if there was any further depression based on the weight of a loaded train, it violated, it was a violation of the regulation. And so there, the jury didn't have to say, well, it was loaded, so it must have gone down more, but we have to decide, did it go down a fourth of an inch or an eighth of an inch? The jury decided if it goes down at all, because we're right on it, it violates. Well, again, Your Honor, the jury still does have to speculate, even based upon what you just said. Again, he's done the measurement. It's two and a quarter inches. He said he didn't remember what he did that day. That particular inspector in Cowden, he was much more circumspect in the other measurements that needed to be made. Mr. Wallace was not in his testimony. At no time did he say that in his normal course and practice that he made those other three measurements. Could the jury find in your favor without expert testimony? Yes. What I said in our brief, obviously, I think expert testimony would be very useful in this case. It would assist the trier of fact. But as we stated in our brief, I believe, given the situation that we have, if the judge had weighed all the facts in this case, given the fact that he doesn't even talk about this, the experience of these two gentlemen when this train bottomed out, even without expert testimony, I think we have created a genuine issue of material fact that gets us to a jury. Now, certainly we would prefer that we be allowed to use Mr. Blackwell as an expert. And, again, I would ask the Court to take a look at Cowden because it gives a road map as to what that Court did in saying, well, Mr. Blackwell can't testify that the railroad violated these federal regulations. He can talk about factually what needed to be done and how these other measurements would affect the dip. But, again, another difference we have in this case that we didn't have in Cowden is the fact that the railroad already knew there was a defect. They had already reduced the track speed from 55 to 40 miles an hour. So they knew that something was going on there. So it's undisputed here. We know there's a defect. The question is, was the defect an inch and five-eighths or was the defect greater than two and a quarter inches? Is that what the defect was? Do we know that it was depression or was it something else with the rail? Well, again, Mr. Wallace wasn't very circumspect in telling us exactly what it was. All we can go on is what he said. And if you look at his deposition, because he doesn't have any recollection, and, again, going back to what we put in our brief, the regulations also require them to keep track notes. Now, again, one of the things the judge did to deflect that in his order, he said, well, you'll have to keep them for a year. Well, another inference that could be drawn in this case, Your Honors, is the fact that here we have before Mr. Sadler is ever notified that they need to do a measurement up there, Mr. Schulenburg has already turned in an injury report. They already are put on notice that somebody has been hurt at that crossing. So wouldn't a reasonable person keep those track notes for more than a year, knowing that a claim has already been made? There's no attorneys involved. But you don't have a claim for they unreasonably didn't keep their track notes. You have a claim for negligence per se. And if there isn't a regulation that required them to keep the track notes for three years, I don't see how you can prevail. Well, you're exactly right, Your Honor. It doesn't require them, as far as negligence per se is concerned, to keep the track notes. But, again, it's a violation of their own rules. They're supposed to keep these notes. It's kind of like when we took geometry in ninth or tenth grade. You're supposed to show your work. And they simply didn't do that. I'm trying to figure out what you would argue to the jury. Would you argue, here's the standard. And because the conductor, Mr. Sutterfield, says this is the worst one that he's experienced in 47 years, which is something that didn't derail, that, therefore, it must have been out of compliance. Well, it almost is a race if it's a local situation, Your Honor. And, again, we did have other testimony. I mean, there was another, Mr. Overstreet, as I recall, it's in the record, when they interviewed other train crews that went over that crossing that day. He said it rode rougher than normal. So, again, there's more than enough evidence for a jury to conclude there was something wrong with that track to make it ride rougher than what the railroad had already taken it down to, knowing that there was a problem there. They ended up fixing it about nine days later. But, counsel, you know, there's something wrong with the track, the defect, whatever. But, ultimately, the question is whether the railroad was in compliance with the regulation. And I'm back to Judge Phillips's question. Don't you need an expert or doesn't the jury need an expert to enable it to reach that conclusion? I don't think we do, Your Honor. But I do think that the judge also abused his discretion in not letting Mr. Blackwell testify as to anything. Well, I understand that that's one of your arguments. And I'd like to ask you about that. But before we get there, in your exchange with Judge McHugh, she was concerned about the jury having to speculate about the deflection and the measurement and all of that. Certainly. And the test is what a rational jury could do, not what a speculative jury can do. Well, and again, it's a situation where we'd all like to be out there the date this thing happens. We'd all like to be able to go and do our own measurements and whatever, but that simply didn't happen. Lawyers weren't out there that day. We didn't have any chance to go out there and do an inspection to find out what the track was. All I can go by is the fact that the railroad had knowledge there was already a defect in the track that caused it to take it down. And by taking it down to 40 miles an hour, that presumes that that is going to protect the train crews and the trains, and at least with these two individuals and another individual that rode over it within that 24-hour period. Let me make sure, turning to your expert, what exactly you're arguing. In your brief, you say that the district court erred in excluding his testimony, and I'm quoting, in its entirety. Yes. So that seems to suggest that you're not saying that the district court erred in excluding some of it. The district court erred in excluding all of it? What exactly are you saying? That's exactly what I'm saying, Your Honor. Okay. And what is it? In his testimony, he did say that the railroad did not, they were in violation of federal regulations. Again, going to Cowden, in that order, they said, no, Mr. Blackwell can't say that. He can talk about what needs to be done. He can talk about how these other four measurements would affect track deflection, but he can't testify that the railroad failed to comply with regulations. In this case, didn't the district court exclude Mr. Blackwell as an expert witness? Not in Cowden, they didn't. Pardon? Not in Cowden. No. I'm talking about this case. In this case, the court excluded Mr. Blackwell, and actually, Your Honor, in reading the two orders together, the court made a determination that in order for us to be able to make a submissible case, that Blackwell had to be able to testify, and what I'm saying is exclusive of that, we have a jury case whether Blackwell testified or not. No, I understand. We've spent most of your time on that, but all right. Thank you. I only have another 20 seconds. I think you're over. I'm over? Okay. Yeah. It goes fast. It does go fast. Thank you so much for indulging me. Thank you. May it please the Court, Robert Hart for BNSF Railway. The issue before the Court today is very narrow. It is whether Mr. Schulenberg can proceed with his claim to a jury on the very narrow issue that he tactically chose to proceed upon in the district court when there's no facts to support the claim. The answer to that, as the district court noted, is no. Due to the tactical choice in the district court, his only path to the jury, as Judge McHugh intimated a while ago, was to show a two-and-a-quarter-inch drop. There's a million ways to skin a cat, as they say. In this case, there was no evidence that there was a two-and-a-quarter-inch drop, none whatsoever, not even an inference from an expert witness saying that for a locomotive to bounce the way it did in this particular case, and I'm speaking hypothetically here if it's even possible, because there was no forces measured in terms of the locomotive, although there were methods to do so. But the locomotive would not have bounced like it did unless there was a defect in the track. Could I just ask you to address this deflection issue? Mr. Wallace didn't recall the particular inspection, but part of that is he didn't recall whether he accounted for the deflection on January 11. Did he testify that his standard practice was to account for deflection in coming up with this calculation? I believe he did. Based upon my questioning, he was cut off. If the court reviews the transcript, he was cut off in his answer when he began to explain the measurements for the deflection. And when he said so, there's actually in the transcript a dot, dot, dot, and then a question by Mr. O'Brien, and that's why I followed up where he explained his general practices. Now, he has to be tested, and he has to be certified to do these track inspections. He's also rode or there are FRA inspectors, federal government inspectors that actually ride with him on a routine basis to make sure that he's doing his inspections correctly. And so, yes, I do believe that we established the fact that per his routine, he properly measured for the displacement due to a vertical drop. His depositions are not as clear as it could be. I mean, he's asked, I think, uncrossed. So, you know, it's the only thing you did. You used your string and you measured. And he says yes, and that was his testimony about the not taking into account the pumping or the load of the train. My recollection is that that was on direct. First, it's Mr. O'Brien's questioning, and then uncross is when I asked him about the measurements. Did he account for the displacement? Yes. Do you follow the regulations when you do these inspections? And the answer was yes. And there's a couple of issues with the regulation itself. The regulation tells the track inspectors to account for the displacement. There's not four separate measurements or anything of that nature. They know by their training and experience how to do that. And so when I asked him whether or not he followed the regulation that took into consideration his training and experience and testing on those exact issues. So are you saying that we should draw an inference that he followed his standard? I don't believe there was an inference at all. I don't believe that they – Well, there was no evidence that there's no – he couldn't remember. So why wouldn't it be an inference? It's not inference if it's under 406. 406 is the habit of a corporation can be introduced. And that's exactly the way that we use the evidence, Your Honor. Because there's not going to be – there's not going to be specific memories three years later. This man knows this track. Don't get me wrong. He goes over it four to five times a week. Well, there might have been if he kept better records. Well, he kept the records that were required by the Federal Registration Electronics Commission. But we don't have a record as to this matter that he took the deflection into account. We have his measurement, which was one and five-eighths. It doesn't say that. And his testimony that it was his routine. I know. I set a record. Do we have a record showing that he took the deflection into account, yes or no? I haven't found one. But if you've got one, tell me where it is in the record. And it's not testimony. I believe we do with the inch and five-eighths. I believe we do, Your Honor. I believe we did before this with the 40-mile-an-hour slow order. Does that record, the inch and five-eighths, anywhere indicate that this includes the pumping or the diversion deflection? I believe in the post-report that the inch and five-eighths encompasses all of the Federal regulations. Well, you believe, but does it say that? Absolutely. Because they have to do their job, and they're required by law to take into account the deflection. Are there words on that document? Of course not. Okay. That's how we were asking. But there's not words on a document that he says should exist, either. There is no such document that he presented to the district court saying that this was the document. Also, on summary judgment, though, we don't draw inferences in favor of the moving party. We draw inferences in favor of the non-moving party. There's no inference to be made. There was no material fact in dispute. He didn't even present the district court with a form that should have supposedly been used. There was no material fact that was actually brought up that was contested. Can I ask you, just taking a little pieces, one-at-a-time approach, what if Inspector Wallace's notes would have said, oops, I forgot to check for the pump and measure if it is two-and-a-quarter? Where would we be? Would that be enough? It would probably be a settled case, I suspect. But would that be enough to go to a jury? You're saying yes if you're saying the case would settle. If Mr. Wallace admitted that he did not follow the Federal regulations when he inspected that particular piece of track. Yes. Then I believe that it's possible that another negligence per se argument could be. Under a different regulation. Perhaps under a different theory. I still think that you have to show some sort of causation that but for, excuse me, not but for, pardon me. I still think you have to show that there was a violation, the two-and-a-quarter, for instance, that would make 40 miles an hour too fast. And so the answer is no, that it wouldn't make a difference. Well, it would make a difference, but there still has to be shown the violation of two-and-a-quarter. I think it's a fact that would have to be taken into account. So the jury could decide on that if he said that he forgot. I think there still has to be evidence that it was two-and-a-quarter, and that can be done by expert testimony. Well, could the jury, the jury, he measured one-and-five-eighths. And we heard, and the jury hears all this testimony of people being thrown out of their seats and all of that, and the worst pumping they've ever experienced. Could the jury infer reasonably from that testimony that it was at least five-eighths of an inch more? No, Your Honor. It could not. And part of that is because of the basket in which the eggs were placed in in the district court. It had to be the measurement. Because it was not brought up, Plaintiff dropped his locomotive inspection claim. That could cause, and it wasn't just the pumping that could cause the locomotive to move or to have forces in there besides going straight down a track. The locomotive could have had a defect, and that was not explored in discovery or anything of that nature. And the second option, or the third option, I guess, could be Mr. Schulenburg's train handling itself. And because that was not an issue in the district court, because of the way that Plaintiff Master or the Master of his complaint brought this case, Mr. Schulenburg's train handling was not even at issue in the federal court. And so there was a question earlier about is it somewhat of a reciprocity issue? Absolutely not. But that issue wasn't before the district court because there's all sorts of different reasons why that a locomotive can move or there can be movement, including the sole control of the plaintiff himself. But Plaintiff didn't choose that route. What's the reason for the one-year requirement on keeping notes? It's to make sure that in case we need them later that we have them available, right? And what about counsel's argument that you knew right off the bat with this, as soon as the train got to Tulsa, that there was at least going to be an issue about that track? Why do you not have to keep those notes? And if your answer is, well, the law doesn't require us to, that's fine, but I'm not sure that that keeps you away from a jury. Counsel's recollection as to that testimony is a little bit different than mine. My recollection of the record was is that Mr. Wallace could not recall if they even used paper notes at the time of this incident, and that they may have been all electronic, which is what Mr. Schulenburg was given in discovery would have been the electronic notes. That's my recollection of the record. And so I don't think that Mr. O'Brien or Mr. Schulenburg proved in the district court that we failed to keep any record that we should have kept. I mean, you can keep electronic records just like you can keep paper notes, right? All of the electronic records were presented to Mr. Schulenburg's attorney. And there were no electronic notes of his measurements in those records? The results of the measurements. Yes. Just the results of the measurements, yes. Okay. So Judge Phillips' question is exactly the same. Whether we're talking about electronic or paper notes, you know immediately that you have an injury claim. Why don't you save the notes, whether they're paper or electronic? There are no notes that I'm aware of where that was established, notes that there shouldn't have been. You're saying they were never made? There's no fact that established that there were any notes that were made at the time of this accident. Aren't they required to be made when he does his measurements? I thought he was required to make notes and keep them for a year. It was my understanding from his testimony in the record below is that he keeps them electronically and they are kept. And so it was the result of the measurements, my understanding from the record, the results of the measurements are the electronic records. So they're required or they're not because you just told us that maybe there were never any records. There's none that Mr. O'Brien is describing is what I'm testifying based upon the testimony of Mr. Wallace down below. He said that they were electronic and the electronic notes were the results of his inspection. Well, Mr. Wallace is sounding like the perfect witness. He doesn't know anything. And is that really the way that this is supposed to work? That is absolutely. I would disagree with you, Judge. I think he does know his job and I think that he did testify that he took into account the displacement. If a train goes off the track out there, Mr. Wallace is directly held responsible for that. I think he has an incentive to keep the trains on the track. Furthermore, there were crews that were deposed in this case that went over this same area of track before and after this incident. And there were no reports of any particular reportable type of event like Mr. Schulenburg reported in this case. And so I do believe that Mr. Wallace did his job in this case. Four to five times a week, which is double and two and a half times what the Federal Railroad Administration requires, which was the fact lost on Mr. Blackwell below. I've been thinking about your answer a couple of minutes ago to the question about why the testimony from Mr. Schulenburg and Mr. Satterfield, why didn't that create a disputed issue of fact? And then I was listening to your answer and you said, well, there are all kinds of reasons that there could have been a severe bounce. It could have been the track, but it could have been something else. And I understand that point, but still, would it be unreasonable for a jury, taking into account your point, to conclude that, you know, here are these guys, they've been working on the railroad for a long time. And this is the worst, at least for Mr. Satterfield, the worst one ever. Now, it may not be dispositive as to the defect in the track. It may not be dispositive as to whether they were out of compliance. But would it be unreasonable for a jury to take that testimony and say, you know, I think that combined with everything else, that they were out of compliance? I believe that it would be unreasonable in this case. There was no tying their testimony specifically to track conditions. I take issue with the way there was no what. Excuse me. I'm sorry. There was no what? There's no tying the testimony for the reason for that, specifically to track conditions. Those gentlemen that are in the locomotive are not experts in trap. Now. Aren't they experts by virtue of years and years of being on a train? Not in terms of what can cause a locomotive to act in that certain way. There is absolutely the way that they're compartmentalized. Mr. or our conductor in the case that testified it was the worst one could not testify to Mr. Schielemerg's train handling, for instance. And neither one of those gentlemen on the train can testify to the track conditions, whether or not they relied or whether they complied. Well, that's the whole point. They're not able to go out there with their string and measurements. They're not trained for that. The railroad is. And so if the railroad comes in court and says, we don't know. Gosh, it's been three years ago, even though we were advised on day one. What are the plaintiffs supposed to do? They can't come in with their ruler and say, we went out and measured it. And here's what the deal is. Well. The district court was given a very narrow question in this case, and it was whether or not we violated the federal regulation. And the evidence that was elicited below was that we did not. Now, there was only one person, a track inspector, who was inspected. We turned over the names of every track inspector who had been over that track for a period of one year before, and I believe it was six months after the incident. One was deposed, and he said he did his job on that day. That was the record below, and that was the facts that the court decided upon. Can I just ask you one thing? Sure. I take it your position is that they needed an expert. Without an expert, they're not able to survive summary judgment. Is that your position? That's my position, yes. All right. Do you have a good – do you have a case that supports that? A case that supports that? Well, it's the general rule that if – No, I want a case. I don't want the general rule. I know the general rule. Do you have a – do you have a good case for that position? Off the top of my head, I apologize. But the cases are multitude that if it's not within the province of a jury to determine the standard in the breach or the duty in the breach, that expert testimony is required, and in this case, I don't believe that they are. And I've never had a railroad case where they were in terms of the technical aspect. Thank you. Thank you. I think we've reached the end of the road, so to speak, and we appreciate the arguments of counsel. The case will be submitted, and counsel are excused.